UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLIE K. HARRINGTON,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C17-5846-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Kellie K. Harrington proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). After a hearing before an Administrative Law Judge (ALJ), the Commissioner granted plaintiff's application for Supplemental Security Income (SSI) as of her SSI application date and denied her application for Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED in part and REMANDED in part for further administrative proceedings.

/ / /

/ / /

ORDER
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1971.[1] She obtained her GED and previously worked as a bartender, cashier, waitress, deli worker, caterer helper, and babysitter. (AR 22, 286.)

Plaintiff filed the SSI and DIB applications currently under review on October 31, 2011 and November 15, 2011 respectively, alleging disability beginning February 28, 2006. (AR 261, 254.) Plaintiff remained insured for DIB through June 30, 2009 and was required to establish disability on or prior to that "date last insured" (DLI) in order to receive DIB. *See* 20 C.F.R. §§ 404.131, 404.321. Her applications were denied initially and on reconsideration.

ALJ Timothy Mangrum held a hearing on August 1, 2013, taking testimony from plaintiff and a vocational expert (VE). (AR 29-53.) The ALJ addressed plaintiff's 2011 applications in a decision dated October 29, 2013. (AR 12-23.) He took note of prior SSI and DIB applications filed by plaintiff in February 2006 and denied in a June 29, 2009 decision by ALJ Catherine Lazuran. (AR 12, 57-66.) The Appeals Council denied plaintiff's request for review of the 2009 decision, but plaintiff did not pursue her appeal rights at the district court level. (*See* AR 12, 627.) As a result, the June 2009 decision was administratively final and the doctrine of res judicata applied. (AR 12.) However, the ALJ found the presumption of continuing non-disability resulting from the prior unfavorable decision rebutted by new medical evidence. He noted that, at hearing, plaintiff amended her alleged disability onset date to June 30, 2009, the day after ALJ Lazuran's decision. The ALJ stated any reference relating to the period adjudicated in the prior, 2009 decision was for the sole purpose of providing context to plaintiff's current, 2011 applications for benefits. The ALJ ultimately concluded plaintiff was not disabled from February 28, 2006 through

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

the date of the decision.

Plaintiff timely appealed. In April 2015, the Appeals Council denied review. (AR 1.) Plaintiff sought further review in this Court and, based on a stipulation of the parties, the Court reversed and remanded for further proceedings in February 2016. (AR 681-82.) The Appeals Council remanded to an ALJ to address a medical opinion indicating a limitation to occasional reaching, to evaluate the medical evidence of record and further consider plaintiff's residual functional capacity (RFC) on the updated record, and, if warranted, obtain supplemental evidence from a VE. (AR 685-86.)

ALJ Mangrum held another hearing on January 25, 2017, taking testimony from plaintiff and a VE. (AR 621-50.) On June 23, 2017, the ALJ issued a partially favorable decision. (AR 605-13.) He found plaintiff not disabled or entitled to DIB at any time through her June 30, 2009 DLI. He also found plaintiff not disabled prior to October 31, 2011, the date of her SSI application, but that she became disabled and entitled to SSI as of that date. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found, since the alleged June 30, 2009 onset date, plaintiff had the severe impairments

of anxiety disorder, personality disorder, and alcohol abuse. Beginning on the October 31, 2011 established onset date, plaintiff had the severe impairments of degenerative joint disease (knee and shoulder), anxiety disorder, personality disorder, posttraumatic stress disorder (PTSD), and alcohol abuse. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found, prior to October 31, 2011, plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: able to do work involving simple, repetitive tasks and some detailed tasks; work not involving much exercise of judgment or decision making; work involving minimal interaction with coworkers or supervisors and occasional to minimal interaction with the public; and work involving low pressure and infrequent changes in activities. Beginning October 31, 2011, plaintiff had the RFC to perform sedentary work, with the following limitations: able to lift and carry up to ten pounds occasionally and less than ten pounds frequently; able to sit for six hours and walk and stand four hours in an eight-hour workday; unable to reach overhead with her left upper extremity, but able to perform lateral and front reaching occasionally; unable to push or pull with left upper extremity; able to climb stairs occasionally; unable to push or pull with left upper extremity; able to climb stairs occasionally, but unable to climb ladders; unable to crawl; able to balance, crouch, kneel, and stoop occasionally; must avoid concentrated exposure to vibration and hazards (such as moving machinery and unprotected heights); able to perform tasks that can be learned in thirty days or less, including tasks involving simple work-related instructions, few work place changes, and jobs

ORDER
PAGE - 4

having no more than a specific vocational preparation level (SVP) of 2; must have no interaction with the public; unable to interact with coworkers or perform tandem tasks, but able to have incidental contact with coworkers; able to have occasional interaction with supervisors; would have problems working at a consistent pace and unable to keep up with coworkers, resulting in her being off task and unproductive for fifteen percent of the workday; and would be absent from work more than one time per month. With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found that, prior to October 31, 2011, there were jobs existing in significant numbers in the national economy plaintiff could have performed and adopted the June 2009 ALJ decision finding. Beginning on October 31, 2011, and with consideration of the testimony of the VE, the ALJ found no jobs existing in significant numbers in the national economy plaintiff could perform. Therefore, plaintiff was not disabled prior to October 31, 2011, but became disabled on that date and continued to be disabled through the date of the decision, and was not under a disability at any time through the June 30, 2009 DLI.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

ORDER
PAGE - 5

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly apply the doctrine of res judicata and the *Chavez* Acquiescence Ruling, AR 97-4(9) (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)), failed to properly evaluate the medical evidence and plaintiff's testimony relating to the time period between June 30, 2009 and October 30, 2011, and failed to properly assess her RFC and render the step five finding in relation to that same period. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings limited to the time period between June 30, 2009 and October 30, 2011. Plaintiff asks the Court to affirm the finding of disability since October 31, 2011. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed. The finding of disability beginning October 31, 2011 is undisputed and properly affirmed. The Court addresses below the parties' arguments regarding the ALJ's other findings.

## Res Judicata

The Commissioner may apply administrative res judicata "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). The Commissioner's refusal to reopen a decision as to an earlier period of time is, as a general matter, not subject to judicial review. *Id*. (citing *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985)).[2] That is, the Social

---

[2] An exception to this general rule, not applicable in this case, applies where the Commissioner considers the issue of a claimant's disability during the already-adjudicated period "'on the merits.'" *Lester*,

ORDER
PAGE - 6

Security Act confers federal jurisdiction to review only "final decisions" of the Commissioner, *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (citing 42 U.S.C. § 405(g)), and an agency decision not to re-open a previously adjudicated claim for benefits is discretionary and not "final" within the meaning of § 405(g), *Krumpelman*, 767 F.2d at 588.

A limited exception to this jurisdictional bar recognizes that res judicata should not be "so rigidly applied as to 'contravene an overriding public policy or result in manifest injustice.'" *Id*. (quoting *Thompson v. Schweiker*, 665 F.2d 936, 940-41 (9th Cir. 1982)). The principle should not, therefore, be applied "'where the record is patently inadequate to support the findings the ALJ made, [and] application of res judicata is tantamount to a denial of due process.'" *Id.*

The application of res judicata is much more limited in relation to a period *subsequent* to a prior determination. *Lester* 81 F.3d at 827. While creating a presumption of non-disability in a subsequent period, the presumption may be overcome with a showing of "changed circumstances." *Id. Accord Chavez*, 844 F.2d at 693; AR 97-4(9). A claimant may overcome the presumption by, for example, showing an increase in the severity of impairments, a change in age category, a new issue, such as an impairment not considered in the prior application, or where the claimant was not represented by counsel at the time of the prior claim. *Id*. (citing *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985), *Chavez*, 844 F.2d at 693, and *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)). *See also Green v. Heckler*, 803 F.2d 528, 531 (9th Cir. 1986) (changed circumstances include a showing impairments became more severe since the date of the earlier decision). If the presumption is rebutted, certain findings in the prior, final decision must be adopted unless there is new and material evidence relating to those findings or a relevant change in law or methodology.

---

81 F.3d at 827 n.3 (quoted source omitted). This "*de facto* reopening" subjects the decision as to the prior period to judicial review. *Id.*

ORDER
PAGE - 7

*See Chavez*, 844 F.2d at 694 (ALJ in prior decision found claimant could not perform past work as a backhoe operator, but could perform a range of light work, while ALJ in subsequent decision found claimant could perform that past work; res judicata applied to first ALJ's finding of an RFC of light work, limited education, and skilled or semi-skilled status, and second ALJ erred in failing to afford preclusive effect to those findings), and AR 97-4(9) (applying *Chavez* specifically to a prior finding of RFC, education, or work experience, or other finding at a step in the sequential evaluation process).

In this case, plaintiff conceded the finality of the June 29, 2009 decision and the proper consideration of her claim beginning June 30, 2009. (AR 627-29, 647.) She avers error, in relation to the period subsequent to the final decision, in considering both the doctrine of res judicata and the medical and other evidence as related to her DIB claim.

In the 2017 decision, ALJ Mangrum separately addressed plaintiff's applications for SSI and DIB. Considering SSI, the ALJ found plaintiff's impairments worsened as of her October 31, 2011 application date. He did not need to "determine whether her impairments changed or worsened before then for the purpose of [the SSI] application given that [SSI] benefits are not payable prior to her application date." (AR 610.) *See* 20 C.F.R. § 416.335. He found a 2012 medical opinion from Dr. Jamie Carter and similar opinions from Dr. David Morgan in 2014 and Dr. Russell Bragg in 2016 supported plaintiff's testimony about the severity of her PTSD. (AR 610 (citing AR 493-99, 834-38, 893-98).) The evidence established plaintiff had the capacity to perform a reduced range of sedentary work since October 2011, with significant difficulty maintaining adequate pace and attendance at work.

Addressing the DIB application, the ALJ described the issue as centered on whether plaintiff was disabled on her June 30, 2009 DLI, the day after the prior, final decision. A different

ORDER
PAGE - 8

attorney failed to appeal the 2009 decision. Plaintiff's current attorney relied on a medical opinion from Dr. Kees Hoffman, dated June 25, 2009 and not addressed by ALJ Lazuran in 2009, as well as records dated in 2008. (AR 610.) The ALJ described plaintiff as essentially arguing the June 2009 decision erroneously determined she was not disabled, adding: "[T]he issue is not whether she was disabled based on a de novo review of the record; rather, she must establish that her condition has changed or that her existing severe impairments have worsened the day after the June 2009 decision." (*Id*. (citing AR 97-4(9) and *Chavez*, 844 F.2d 691).) Further:

> The June 2009 decision, as [plaintiff] acknowledged, became final and binding. If she disagreed with that decision for any reason, she should have appealed it. The finality of the June 2009 [decision] created significant consequences, including a change in the standard under which all subsequent applications must abide. I cannot simply disagree with the June 2009 decision, find that she had greater limitations than previously found, and conclude that she was actually disabled. In other words, I cannot issue a new decision finding her disabled now under the guise of worsening and, by doing so, disregard the mandates of the agency's policy and the U.S. Court of Appeals for the 9th Circuit. Further, this is not a situation where her [DLI] involved a considerable period after the June 2009 decision. The period under consideration was just one day, specifically on June 30, 2009.

(AR 610-11.)

The ALJ concluded plaintiff failed to establish she had new severe impairments or the worsening of impairments the day after the June 2009 decision. (AR 611.) There were no records documenting worsening or establishing new impairments specifically related to June 30, 2009. Dr. Hofman's opinion on June 25th could not demonstrate worsening after June 29th, and did not indicate any expectation of worsening as of June 30th. The opinion reiterated prior opinions from Dr. Lawrence Moore, and was similar to opinions and treatment notes considered in the June 2009 decision. (*Id*. (citing AR 63, 363, 511).) The opinion "was also somewhat inconsistent with the

record in that she was not a person who was completely unable to interact with others, as his opinion would indicate." (*Id*.) The 2009 decision had addressed this point and plaintiff herself indicated in her testimony "she was capable of more things in 2009 in comparison to latter years." (*Id*. (citing AR 62 (goes outside, drives, uses public transportation, shops for food, goes camping, etc.) and 2017 hearing testimony).) Plaintiff failed to establish her overall condition changed for the worse on June 30, 2009, and the ALJ could "not substitute [his] determination in place of the June 2009 decision under the guise of worsening or material change in condition, thereby disregarding the prevailing rules and laws[.]" (*Id*.)

Plaintiff argues the ALJ inaccurately framed the issue as whether her condition worsened on June 30, 2009, and that the issue was whether she provided new evidence showing she was more limited between June 30, 2009 and October 30, 2011 than she was found to be by ALJ Lazuran. That is, she did not need to show her actual condition was worse on June 30th than it was on June 29th, but that it was worse on June 30th than ALJ Lazarun found it to be on June 29th. Plaintiff maintains the administrative finality of the June 29th findings did not preclude the ALJ from making different findings and drawing different conclusions for the time period beginning June 30th. She rejects the depiction of her position as asking for a finding of disability "under the guise of worsening" and argues the evidence shows she was more limited between June 30, 2009 and October 11, 2011 than ALJ Lazuran found.

In identifying new and material evidence rebutting the presumption of continuing nondisability and showing greater limitation on June 30, 2009, plaintiff points to Dr. Hofman's evaluation, conducted five days before her DLI, supporting greater limitations than found by ALJ Lazuran, and including a PTSD diagnosis. (AR 509-13.) She also points to June 9, 2010 and February 21, 2011 evaluations from Dr. Amanda Ragonesi (AR 474-91), a July 17, 2012

ORDER
PAGE - 10

evaluation from Dr. Moore (AR 514-18), as well as his earlier opinions between 2006 and 2008 (AR 361-80), and the evaluations from Drs. Carter, Morgan, and Bragg dated between 2012 and 2016 (AR 493-99, 834-38, 893-98) and relied upon by the ALJ in finding disability as of October 31, 2011 (AR 610). Plaintiff asserts error in the ALJ's failure to properly consider this evidence in reaching a determination for the period prior to October 30, 2011.

Plaintiff also avers error in the ALJ's assessment of her testimony, RFC, and in the step five finding. She notes the absence of any reason provided for accepting her testimony only as of October 2011 (*see* AR 610) or for rejecting her testimony as related to the period between that date and June 30, 2009, and the failure to make new RFC and step five findings for that same period (*see* AR 61, 65, 608, 612 (adopting same RFC and step five finding as in 2009 decision).)

The Commissioner rejects plaintiff's depiction of the proper inquiry into changed circumstances as lacking grounding in any authority, and denies error in the ALJ's application of the presumption of continuing nondisability. Noting that three of Dr. Moore's opinions and the opinion of Dr. Hofman predate the administratively final decision, the Commissioner argues they cannot show changed circumstances after that decision. While relevant to the period at issue, the 2010 and 2011 opinions from Dr. Ragonesi still do not show plaintiff's condition worsened or circumstances otherwise changed after June 29, 2009 and, like the opinion of Dr. Hofman, amount to a mere reiteration of the opinions of Dr. Moore and other evidence considered by ALJ Lazuran. Dr. Ragonesi, like Dr. Moore, pointed to plaintiff's depression and anxiety in rendering her opinions. (*See* AR 366, 373, 380, 482, 291.) Plaintiff's report to Dr. Ragonesi that she struggled with these symptoms since childhood undermined her argument of changed circumstances, and Dr. Ragonesi's description of her depressive and anxiety symptoms as longstanding further supported the ALJ's analysis. (AR 480, 491.) The Commissioner also asserts that Dr. Moore's

ORDER
PAGE - 11

2012 opinion and other opinions dated after October 31, 2011 serve only to support the ALJ's finding of disability at that time. She notes the absence of an explanation as to how later-dated opinions relate back to the earlier time period. The Commissioner, finally, rejects the assignment of error in relation to plaintiff's testimony, denying any changed circumstances prior to October 2011 that would permit revisiting the 2009 finding, and asserting the similarity in testimony preceding the 2009 and 2017 decisions.

In the 2013 decision, ALJ Mangrum did not distinguish between plaintiff's DIB and SSI claims and found plaintiff had rebutted the presumption of continuing non-disability as applied to the period subsequent to the June 29, 2009 decision with new medical evidence. (AR 12.) While the ALJ did not explain why he changed his position on this issue in 2017, he was not required to make the same findings in conducting his de novo review. (*See* AR 624-25 (plaintiff's counsel at hearing: "[T]his is a de novo hearing which means we're looking at everything all over again . . . and no specific aspect of the Commissioner's final Decision is affirmed.")) The ALJ was, however, required to properly assess medical opinions and plaintiff's testimony in conducting the de novo review. The Court finds the ALJ failed to sufficiently address the evidence in reaching his conclusions.

The decision to separately discuss, first, plaintiff's SSI application and, second, her DIB application allowed for a gap in the consideration of the evidence. That is, the ALJ deemed irrelevant any evidence dated after June 30, 2009 and prior to October 31, 2011 by first finding plaintiff entitled to SSI benefits as of the application date, but necessarily no earlier, and then considering whether she had demonstrated changed circumstances as of June 30, 2009. This approach did not allow for consideration of the opinions of Dr. Ragonesi rendered in June 2010 and February 2011, or any other evidence or testimony as related to the time period between

ORDER
PAGE - 12

plaintiff's DLI and the SSI application date. While the Commissioner here offers her own reasons for rejecting such evidence, the Court is required to review the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

It is true that, in order to receive DIB benefits, plaintiff was required to establish disability on or before June 30, 2009. 20 C.F.R. §§ 404.131, 404.321. The June 29, 2009 final decision provided an extraordinarily narrow window in which to make such a showing. However, medical opinions that post-date the DLI may be relevant to determining whether a claimant was disabled on or before the DLI. *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988) (medical opinions cannot be disregarded solely because they post-date the DLI); *accord Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007); *Lester*, 81 F.3d at 832. *But see Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ may discount post-DLI opinion where it does not have retrospective applicability or where it is inconsistent with pre-DLI evidence). The ALJ here stated, with no further discussion, that there were no records documenting worsening or establishing new impairments specifically related to June 30, 2009. (AR 611.) He otherwise limited his discussion to the evidence from Dr. Hofman. In so doing, the ALJ failed to address significant probative evidence. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss each piece of evidence in the record, but must explain why significant probative evidence has been rejected), and *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical opinion evidence.").

The ALJ's decision does not, for example, sufficiently analyze the evidence associated with PTSD. The ALJ rejected the opinion of Dr. Hofman, in part, because it was rendered five

ORDER
PAGE - 13

days prior to the DLI, did not address worsening, reiterated Dr. Moore's opinion of plaintiff's substantial problems with social interaction, and was similar to opinions and treatment notes considered by ALJ Lazuran. (AR 611.) However, unlike the opinions of Dr. Moore in 2006, 2007, and 2008 (AR 361-80), Dr. Hofman, prior to the DLI, diagnosed plaintiff with PTSD and specifically attributed her social limitations to that condition (AR 510-11 ("Avoids all public situations; lives like hermit; easily triggered with anxiety or anger – severe PTSD – flashbacks, nightmares etc")). In the evaluation dated closest to the opinion of Dr. Hofman, Dr. Moore did recognize "some indication of PTSD related symptomatology[.]" (AR 366 (May 21, 2008).) By July 17, 2012, Dr. Moore identified PTSD, with features of generalized anxiety disorder, as plaintiff's sole Axis I diagnosis. (AR 516.) Dr. Ragonesi had, in the interim, twice diagnosed PTSD. (AR 480-83 (June 9, 2010), 491 (February 2, 2011).) The ALJ, moreover, pointed specifically to plaintiff's testimony and the "multiple opinions supporting her testimony about the severity of her PTSD[]" in finding her disabled as of October 31, 2011. (AR 610.) Yet, the decision contains only a partial evaluation of the evidence associated with PTSD.

The ALJ, in sum, erred in failing to fully consider the medical opinion evidence and plaintiff's testimony in relation to the DIB claim. As argued by plaintiff, this error potentially implicated both the RFC assessment and the conclusion at step five.

<u>Remand</u>

Plaintiff posits her satisfaction of the criteria necessary to allow for an award of benefits, including that (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly rejected evidence were credited as true, the ALJ would be required to find plaintiff disabled.

ORDER
PAGE - 14

*Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). *See also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014), and *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Plaintiff asserts that, credited as true, the medical evidence and her testimony shows she was disabled between June 30, 2009 and October 30, 2011. She asks that the Court exercise its discretion and remand for an award of benefits.

However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler*, 775 F.3d at 1099). *Accord Leon v. Berryhill*, No. 15-15277, 2017 U.S. App. LEXIS 22330 at *3, 874 F.3d 1130, ___ (9th Cir. Nov. 7, 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.") Even with satisfaction of the three remand criteria, the Court retains flexibility in determining the proper remedy. *Brown-Hunter*, 806 F.3d at 495. The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id*. If the record is uncertain and ambiguous, the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

The Court has no difficulty in finding this matter properly remanded for further proceedings. While the ALJ failed to conduct a sufficient analysis, plaintiff's road to an award of benefits is an exceedingly narrow one in light of the June 29, 2009 final decision and plaintiff's June 30, 2009 DLI. However, the ALJ, not the Court, is tasked with the responsibility of considering the evidence, assessing testimony and the RFC, and in reaching a conclusion at step five. On remand, the ALJ should conduct that analysis in relation to plaintiff's DIB application.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED in part and REMANDED in part

ORDER
PAGE - 15

for further administrative proceedings. The finding of disability beginning October 31, 2011 is affirmed. The matter is otherwise remanded for further administrative proceedings in relation to plaintiff's DIB claim.

DATED this 29th day of August, 2018.

Mary Alice Theiler
United States Magistrate Judge